UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 2:19-cr-00126-JDL |
| v. | ) |
| | ) |
| MICHAEL CURTIS PEAVEY WRIGHT | ) |

### GOVERNMENT'S RESPONSE
### TO DEFENDANTS' MOTION TO SUPPRESS

The United States of America, by and through its attorneys, Halsey Frank, United States Attorney for the District of Maine, and Nicholas Scott, Assistant United States Attorney, respectfully objects to defendant Michael Curtis Peavey Wright's motion to suppress (ECF No. 36). For the reasons set forth below, the United States requests that the motions be denied.

### FACTS

On February 22, 2019, at approximately 2:10 am, Trooper Jesse Duda, of the Maine State Police observed a Red Ford F150 Pickup Truck travel through the York Toll Plaza, on Interstate 95, in the vicinity of York, Maine. Trooper Duda conducted a check on the registration plate of the Ford F150 through his mobile data terminal, and discovered that the registration was expired. Trooper Duda initiated a traffic stop by employing his lights and siren, and the Ford F150 pulled over. [1]

Upon approaching the Ford F150, Trooper Duda observed a female operator, and three passengers, including the defendant. Trooper Duda observed that the Trooper Duda asked the operator if this was her car, and she replied that it was not. Trooper Duda requested that the operator provide her license, and the vehicle registration and insurance. The operator, who

---

[1] The stop and the resulting encounter with the defendant were captured via dashboard surveillance cameras located on the Trooper's vehicles. If there is no objection from the defendant, the government will provide the videos to the Court in advance of the hearing.

1

appeared nervous and shaky to Trooper Duda, was unable to locate the registration and insurance, and did not check the glove box for those items. The operator provided Trooper Duda with her driver's license, which bore a Presque Isle, Maine address.[2] Trooper Duda and the operator engaged in a brief discussion during which the operator indicated that she was staying in Bangor with friends, and had come down to Kittery to pick up the truck at a rest stop. Based on his observations of the operator Trooper Duda believed her to be nervous. Trooper Duda further observed a glass marijuana pipe next to the front center console and smelled the odor of burnt marihuana in the vehicle and noticed that the rear passengers were not wearing seatbelts. Trooper Duda asked each of the passengers if they had identification, and each stated that they did not.

      Trooper Duda asked the operator to step out of the vehicle, patted her down without feeling any weapons, and had her stand by the open passenger window of his Maine State Police Vehicle, while he sat inside and conducted checks through his mobile data terminal. One of these checks indicated that the operators name had been flagged in a law enforcement database in connection with an investigation into narcotics distribution. While performing these searches Trooper Duda engaged in a conversation with the operator regarding her trip to the rest stop to retrieve the truck. Trooper Duda found the operator's responses to be vague and believed that her responses did not make sense. In addition, when asked who the vehicle belonged to, the operator struggled to come up with the name, and only provided the last name of the registered owner. During this conversation, the operator identified the defendant as "Louie."

      Sergeant Thomas Pappas, of the Maine State Police, arrived at the scene to provide assistance. Sergeant Pappas spoke to the passengers of the Ford F150, and the defendant

---

[2] York, Maine is approximately a five hour drive from Presque Isle, Maine.

provided his name as "Michael Wright," and indicated he was from "Kittery, Massachusetts," which Sergeant Pappas knew to be false, since Kittery is a city in Maine, not Massachusetts. Sergeant Pappas asked the defendant to step out of the truck, and asked to pat the defendant down, but did not locate any weapons. Sergeant Pappas then engaged in a conversation with the defendant, while conducting computer searches to verify the defendant's identity, but was unable to locate any records of the name and date of birth provided by the defendant. The defendant indicated that police always had trouble finding his name, but never provided his full name "Michael Curtis Peavey Wright." In addition, at the defendant stated at one point that he never told "her" meaning the operator, that his name was "Louie," and alternately, that people called him "Louie" because he wore Louis Vuitton (a fashion brand).

Trooper Duda brought his trained narcotics detection canine "Mack," to sniff the Ford F150, which resulted in the canine altering to the odor of narcotics on the vehicle. Sergeant Pappas then detained and handcuffed the defendant, after which Sergeant Pappas patted the defendant down a second time. Sergeant Pappas located an object in the defendant's pants and removed the object by manipulating the outside of the defendant's pants. Sergeant Pappas observed the object to be a quantity of suspected controlled substances wrapped in plastic bags and plastic wrap. This object was later determined by a laboratory to be a mixture containing fentanyl weighing approximately 100 grams.

## ARGUMENT

### I.     Troopers had Probable Cause to Search the Defendant

The defendant moves for suppression of the drugs seized from his person, on the sole ground that the search that resulted in the recovery of fentanyl from the defendant "exceeded the bounds of the Terry doctrine and thus violated [the defendant's] right to be free from

unreasonable search and seizures." (Motion to Supress, page 2).  However, Sergeant Pappas had probable cause to search the defendant, the vehicle, as well as the other occupants of the vehicle, at the time of the search that resulted in the recovery of the fentanyl.

Probable cause exists when "'the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'"  United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).  In other words, a court considers "the totality of the circumstances in evaluating whether the government demonstrated a sufficient 'probability . . . of criminal activity.'"  Id. at 1023-24 (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983)).  "Probability is the touchstone . . . . The government need not show 'the quantum of proof necessary to convict.'"  Id. at 1023 (quoting United States v. Miller, 589 F.2d 1117, 1128 (1st Cir. 1978)).

Probable cause is a fluid concept and must be evaluated upon the totality of the circumstances.  Illinois v. Gates, 462 U.S. 213, 238 (1983).  As the term implies, the process does not deal with hard certainties, but with probabilities.  United States v. Cortez, 449 U.S. 411, 418 (1981).  In Ornelas v. United States, 517 U.S. 690 (1996), the Supreme Court explained that the probable cause determination is twofold.  First, judges must determine the events that transpired leading up to the arrest.  Second, judges must decide "whether these historical facts, viewed from the standpoint of a[] . . . reasonable police officer," amount to probable cause.  Id. at 696.  Probable cause may be developed based upon a police officer's personal observations, McDonald v. United States, 335 U.S. 451, 454-55 (1948); United States v. Martinez-Molina, 64 F.3d 719, 730 (1st Cir. 1995); hearsay sources, Draper v. United States, 358 U.S. 307, 311-13 (1959); evidence from interviews and searches, United States v. Lehmann, 798 F.2d 692, 694

(4th Cir. 1986); and on the "collective knowledge possessed by, and the aggregate information available to, all the officers involved in the investigation" United States v. Winchenbach, 197 F.3d 548, 555 (1st Cir. 1999). See also United States v. Curry, 751 F.2d 442, 446 (1st Cir. 1984) (ruling that an appropriate basis for probable cause is the "collective information of the law enforcement officers engaged in a particular investigation.") (internal quotations and citation omitted).

The "'[t]otality of the circumstances' approach…allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266 (2002); *see also United States v. Ruidiaz*, 529 F.3d 25, 29 (1st Cir. 2008) (discussing "measured degree of deference" afforded to "perceptions of experienced law enforcement officers" and reasonable inferences permitted to be drawn from the evidence). Furthermore, "[o]fficers assigned to specialized areas of enforcement become familiar with the methods of those engaged in particular types of criminal activity thereby giving them an ability to detect unlawful activity where laymen might not." *United States v. Funches*, 327 F.3d 582, 586 (1st Cir. 2003).

In the instant case, the totality of the circumstances known to both Sergeant Pappas and Trooper Duda provided probable cause to believe that the occupants of the vehicle were in possession of narcotics. At the time of the search that resulted in the recovery of fentanyl from the defendant, Sergeant Pappas and Trooper Duda had learned that:

- The owner of the Ford F150 was not present.

- The operator was unable to provide a registration and insurance for the vehicle.

- The operator's explanations of how she came into possession of the vehicle and her travels prior to the stop were vague and did not make sense to Trooper Duda.

- Trooper Duda noticed the odor of burnt marijuana emanating from the vehicle, and observed a marijuana pipe in the vehicle, providing reason to believe that an occupant or the occupants of the vehicle had smoked and possessed marijuana.

- The defendant, along with the other three passengers of the Ford F150 did not have any identification.

- A computer database check revealed that the operator's name was connected to an investigation involving narcotics distribution.

- The operator provided defendant's name as "Louie."

- The defendant indicated his name was "Michael Wright."

- Then defendant stated that he never told the operator that his name was "Louie," and later stated that he was called "Louie" due to wearing "Louis Vuitton."

- Troopers were unable to locate any record of an individual named Michael Wright with the date of birth provided the defendant.

- The defendant indicated that he lived in Kittery, Massachusetts, a non-existent city.

- A trained narcotics detection canine provided a positive alert to the odor narcotics on the Ford F150.

Viewed in isolation, any one of the above indicators might not have provided probable cause to search the defendant. However, when viewed altogether, the indication of the odor of narcotics, combined with the suspicious behavior of the vehicle's occupants, and the defendant's apparent attempt to obscure his identity, provided probable cause to believe that the defendant possessed

6

narcotics. These observations, made by experienced law enforcement officers, provided reasonable suspicion that the defendant possessed narcotics.

> II. *Troopers Had Probable Cause to Arrest the Defendant for Violation of Title 29-A §105 of Maine Motor Vehicle and Traffic Law and the Search of the Defendant was Incident to a Lawful Arrest*

Upon approaching the Ford F150, Trooper Duda observed that the defendant was not wearing a seatbelt, in violation of Title 29-A §2081(3-A) of the Maine Motor Vehicle and Traffic Law. Violation of this subsection is a traffic infraction punishable by a fine. The subsection specifically notes that "[a] vehicle, the contents of a vehicle, the driver of or a passenger in a vehicle may not be inspected or searched solely because of a violation of this subsection." In this case, however, Troopers had probable cause to believe that the defendant had failed to provide his true name and/or date of birth, thus violating Title 29-A §105 of Maine Motor Vehicle and Traffic Law, a Class E crime.[3] The facts known to the Trooper, included (1) inconsistencies between the defendant and the operator of the vehicle regarding the defendant's name, (2) the defendant's claim that he lived in the non-existent city of Kittery, Massachusetts (3) the inability of the Troopers to locate any record of the defendant, and (4) the lack of any identification for the defendant, provided probable cause to believe that the defendant was obscuring his identity. This provided probable cause to arrest the defendant, and any subsequent search can be justified as incident to a lawful arrest,

---

[3]Title 29-A §105 of Maine Motor Vehicle and Traffic Law provides that "A person is guilty of a Class E crime if a law enforcement officer has probable cause to believe the person violated or is violating this Title and the person intentionally fails or refuses upon request to give the person's correct name, address or date of birth to a law enforcement officer."

7

## **CONCLUSION**

The search of the defendant was supported by probable cause and incident to a lawful arrest. As such, the resulting seizure of fentanyl and arrest of the defendants was lawful. The Government respectfully requests that the Defendants' motions be denied.

Date: August 19, 2019

>Respectfully submitted,
>
>Halsey Frank
>United States Attorney
>
>/s/Nicholas Scott
>Assistant U.S. Attorney
>United States Attorney's Office
>100 Middle Street
>Portland, ME 04101

## CERTIFICATE OF SERVICE

      I hereby certify that on August 19, 2019, I filed the foregoing response using the CM/ECF system, which will cause a copy to be sent to the following counsels:

James Mason, Esq.

                                  /s/Nicholas Scott
                                  Assistant U.S. Attorney
                                  United States Attorney's Office
                                  100 Middle Street
                                  Portland, Maine 04101
                                  Nicholas.scott@usdoj.gov