UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.            ) | Case No. 2:19-CR-126-JDL |
| ) | |
| **MICHAEL PEAVEY-WRIGHT** ) | |

DEFENDANT'S SUMMARY ARGUMENT TO
MOTION TO SUPPRESS HEARING

The defendant, Michael Peavy-Wright[1] by and through his counsel, submits this summary argument in support of his motion to suppress (ECF no. 36) and to the hearing held on October 1, 2019:

**Summary.** Trooper Thomas Pappas violated Mr. Peavy-Wright's constitutional right to not be subjected to unreasonable searches and seizures. An officer may "conduct a carefully limited search of the outer clothing . . . in an attempt to discover weapons." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Trooper Pappas conducted an unconstitutional search not once, but twice on Mr. Peavy-Wright in the early morning of February 22, 2019. "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (*citing Sibron v. New York*, 392 U.S. 40, 65-66 (1968)). As there was no was no justification for a *Terry* search, nor probable cause to support an arrest, these were illegal, warrantless searches and Mr. Peavy-Wright's motion to suppress should be granted.

**Facts from Hearing.** Mr. Peavy-Wright was in the rear passenger seat of a vehicle when it was stopped by Trooper Jesse Duda for an expired registration. According to the

---

[1] Mr. Peavy-Wright's last name is misspelled in the caption of this case, but the correct spelling will be used in this summary argument.

testimony of the troopers, there was no other reason to stop the vehicle. Neither the vehicle, nor its occupants, were under any suspicion for any other type of criminal or dangerous activity. Each of the troopers confirmed this was simply a traffic stop. It was in conducting a traffic stop Trooper Pappas approached the vehicle, and according to his testimony, saw Mr. Peavy-Wright not wearing his seat belt.[2] He also testified he saw the other rear passenger failing to wear a seatbelt. Trooper Pappas questioned all of the passengers of the vehicle about their identity and Mr. Peavy-Wright gave his name as "Michael Wright." When asked about where Mr. Peavy-Wright was from, Trooper Pappas testified he heard Mr. Peavy-Wright say that he was from Kittery, Massachusetts.[3] Gov't Ex. 3 – Trooper Thomas Pappas Dashboard Camera Video WatchGuard Format ("Ex. 3") at 02:25:00.

Because Mr. Peavy-Wright wasn't wearing a seatbelt when Trooper Pappas approached the vehicle, and Trooper Pappas' believed Mr. Peavy-Wright identified himself as coming from a non-existent town, Trooper Pappas ordered him out of the vehicle.[4] Ex. 3 at 02:25:53. Trooper Pappas testified that at the moment he did so, he did not have any reason to suspect Mr. Peavy-Wright as possessing weapons. He also testified that he did not have any fear or suspicion Mr. Peavy-Wright posed a danger. He ordered Mr. Peavy-Wright put his hands above his head and

---

[2]     Neither trooper testified seeing Mr. Peavy-Wright failing to wear his seat belt while the car was in operation.

[3]     Both troopers testified about the difficulty in hearing responses to questions because the car was parked a few feet off of Interstate 95. The audio of Government's Exhibits 1 and 3 document both officers having to repeat questions during the initial stages of the traffic stop. Mr. Peavy-Wright's responses to Trooper Pappas' questions are barely audible.

[4]     Trooper Pappas did not order the other rear passenger, a white female, out of the vehicle at that time; only Mr. Peavy-Wright, an African American male.

then conducted an extensive search of his entire body.[5] Gov't Ex. 1 Trooper Jesse Duda

Dashboard Camera Video WatchGuard Format ("Ex. 1") at 02:26:24.

Over the course of the next twenty minutes, Mr. Peavy-Wright attempted to assist Trooper Pappas in determining his identity. Trooper Pappas acknowledged Mr. Peavy-Wright gave his first and last name. Ex. 3 at 02:28:13. He gave his middle name. Ex. 3 at 02:28:25. He told Trooper Pappas he never had a driver's license, but the last time he had an identification card, it was out of Columbus, OH. Ex. 3 at 02:32:00. He gave his date of birth again (after having given it to Trooper Pappas when the trooper first approached the vehicle). Ex. 3 at 02:40:45. Mr. Peavy-Wright told Trooper Pappas about the hyphen in his last name and followed that up with details about prior encounters with law enforcement when law enforcement had difficulty confirming his identity. Ex. 3 at 02:39:00 – 02:41:30. He offered to give his social security number. Ex. 3 at 02:41:39. Five minutes after that, Trooper Pappas finally called into the dispatch with Mr. Peavy-Wright's hyphenated name. Ex. 3 at 02:44:25. Trooper Pappas misspelled the name when speaking to dispatch, and Mr. Peavy-Wright corrected him. Id.[6]

Trooper Pappas did not wait to hear back from dispatch. Frustrated, Trooper Pappas told Mr. Peavy-Wright he was being detained because Trooper Pappas could not identify him, because Trooper Pappas believed Mr. Peavy-Wright said he was from Kittery, Massachusetts,

---

[5] By comparison, the search of the driver of the vehicle by Trooper Duda was limited to pockets and the waistband, areas Trooper Duda testified could have contain a weapon.

[6] It was during this period that Trooper Duda had his dog attempt to detect drugs in the vehicle. Trooper Duda testified the dog detected the presence of drugs in the car even though no drugs were found in the car. He admitted on the stand the drugs found in the object on Mr. Peavy-Wright, fentanyl, is not one his dog is even trained to detect. *See also* Government's Exhibit 2 – "Trooper Duda and Canine Mack Training Records." Trooper Duda stated did not remember telling Trooper Pappas the dog had indicated (erroneously it turns out) there were drugs in the vehicle. Trooper Pappas testified he took Trooper Duda's inquiry of whether a female officer should be called to assist with the three females who were also in the vehicle as a secret code the dog had found drugs in the vehicle. The dog never searched Mr. Peavy-Wright.

and Trooper Pappas believed Mr. Peavy-Wright had not been wearing a seatbelt.[7] Ex. 3 at 02:47:25. He proceeded to search Mr. Peavy-Wright. Ex. 3 at 02:47:25 – 02:50:00. He testified at the hearing that at the time of conducting the search he did not fear for his safety or have particularized information suggesting Mr. Peavy-Wright was in possession of weapons. Trooper Pappas put his hands in Mr. Peavy-Wright's crotch, and ran his hands up and down one leg, returning again to search Mr. Peavy-Wright's crotch. Id. He stopped the search and told Mr. Peavy-Wright he believed there were drugs in Mr. Peavy-Wright's pants. Id. Trooper Pappas first attempted to manipulate the object so that it would fall down and out of Mr. Peavy-Wright's pants. Id. He then manipulated the object up Mr. Peavy-Wright's pants until he could take the object out from between the waistband of Mr. Peavy-Wright's pants and underwear. Id. This object is the subject of this motion to suppress.

Approximately seven minutes after finishing the second search, Trooper Pappas was informed by the dispatcher there was a positive identification of Mr. Peavy-Wright using the information Mr. Peavy-Wright provided to Trooper Pappas prior to his "detention." Ex. 3 starting at 02:56:00. Dispatch provided Trooper Pappas a picture of Mr. Peavy-Wright electronically eight minutes after that. Ex. 3 starting at 03:03:00.

**Both searches by Trooper Pappas were impermissible, warrantless searches.** The Fourth Amendment bans unreasonable searches and seizures, *see, e.g., Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and a search done without a warrant supported by probable cause is presumptively unreasonable unless an exception to the warrant requirement applies, *see, e.g., United States v. Lopez*, 989 F.2d 24, 26 (1st Cir.1993). Law enforcement can

---

[7] At the hearing, Trooper Pappas testified on direct examination he arrested Mr. Peavy-Wright for a seat belt violation and this was a search incident to arrest. On cross-examination, he denied saying he had just testified he arrested Mr. Peavy-Wright for a seat belt violation.

stop a car seen committing a traffic offense. *U.S. v. McGregor*, 650 F.3d 813, 820 (1st Cir, 2011). As part of that stop and the investigation thereof, occupants of a vehicle can be ordered out of the vehicle. *Id.* (*citing* Maryland v. Wilson, 519 U.S. 408, 410, 414-15 (1997). If an officer "has some articulable, reasonable suspicion that the persons stopped may be dangerous, he can pat them down…for weapons that they could quickly lay their hands on." *U.S. v. McGregor*, 650 F.3d 813, 820 (1st Cir, 2011). "But the scope of the search must be limited to this protective purpose." *Id.*

At the time he conducted the first search, Trooper Pappas testified he did not suspect Mr. Peavy-Wright was carrying weapons, nor did Trooper Pappas to be concerned about his safety, reasons that could have supported a *Terry* search. He simply ordered Mr. Peavy-Wright out of the car, told him to put his hands on his head and conducted a search far beyond the range of what is permissible for the "protective purpose" espoused in *Terry*. While this search isn't the one producing the unconstitutionally obtained object, its shadow extends onto the second search.

Even if Trooper Pappas, despite denying it on the stand, could be said to have had some articulable suspicion of weapon or fear for his safety, the steps he took during the second search – both the extent to which he conducted the search and the efforts to manipulate the object out of Mr. Peavy-Wright's pants exceeded what is permissible under *Terry.* During a pat down search, a police officer may only seize an object "if its incriminating character is immediately apparent." *United States v. Schiavo*, 29 F.3d 6, 9 (1st Cir. 1994). In *Minnesota v. Dickerson*, the Supreme Court held an officer improperly seized contraband when he "manipulate[ed] the contents of the defendant's pocket" to discover a lump of crack cocaine. 508 U.S. 366, 378 (1993). In manipulating an object which the officer did not believe was a weapon, the Court determined

such manipulation "amounted to the sort of evidentiary search that *Terry* expressly refused to authorize." Id. The same should be said about Trooper Pappas' manipulation here.

**Search incident to arrest.** The government attempts to rescue the search by arguing it is a search incident to arrest. It isn't clear Trooper Pappas can even now say why he "arrested" Mr. Peavy-Wright. On his Watchguard video, he can be heard saying he is just "detaining" Mr. Peavy-Wright. At the hearing, Trooper Pappas testified he arrested Mr. Peavy-Wright for a seat-belt violation, though he later denied saying this. Clearly, the seat belt violation wasn't the basis for an arrest because failure to use a seatbelt under 29-A MRS § 2081(3-A) is not a criminal offense, only a civil traffic offense. Nor could this section allow Trooper Pappas to search Mr. Peavy-Wright because it explicitly prohibits it: "[a] vehicle, the contents of a vehicle, the driver of or a passenger in a vehicle may not be inspected or search solely because of a violation of this subsection." *Id.*

The Government offers 29-A MRS § 105(4) as a lifeline to rescue the search from its unconstitutional depths by asserting the seat belt violation *and* the allegation Mr. Peavy-Wright "intentionally fail[ed] or refuse[d] to give [his] correct name, address or date of birth to a law enforcement officer" as giving rise to a Class E misdemeanor and therefore an arrestable offense. They ask this Court to look at the facts in this case from the "standpoint of a reasonable police officer" as supporting the probable cause to arrest Mr. Peavy-Wright for this violation. *Gov't Summation on the Suppression Hearing*, p.3 (ECF no. 50) (*citing Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "[O]fficers may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence." Virginia v. Moore, 553 U.S. 164, 2008) (*citing United States v. Robinson*, 414 U. S. 218 (1973).

What is lacking here is a constitutionally permissible arrest under 29-A MRS § 105(4). Since a review of the facts show Mr. Peavy-Wright did, in fact, give his proper name and date of birth to Trooper Pappas, the question for this Court is whether Trooper Pappas was reasonable in his determination *at the time* Mr. Peavy-Wright was not giving his correct information. Mr. Peavy-Wright did everything possible to make Trooper Pappas believe he was telling the truth. Trooper Pappas, as can been seen in the zealousness of his first illegal search, believed there was illegal activity going on beyond just a seat belt violation and was impatient to conduct yet another evidentiary search of Mr. Peavy-Wright. Minutes after completing the search, Trooper Pappas was given confirmation from dispatch of Mr. Peavy-Wright's identity, confirmation that would have removed his authority to conduct the search he anxiously wanted to do.

Trooper Pappas' impatience is not sufficient grounds to establish probable cause Mr. Peavy-Wright was providing false biographical information to him. The fact Mr. Peavy-Wright was giving him the correct information, while not dispositive, undercuts the Government's argument Pappas' belief was reasonable. All that is left for Trooper Pappas to point to is a misunderstanding as to where Mr. Peavy-Wright was from due to the noise of the road, and Trooper Pappas' belief Mr. Peavy-Wright wasn't wearing a seatbelt. Given the totality of Trooper Pappas' actions that night, this simply isn't enough to support the probable cause determination necessary to uphold the search. *Compare Reid v. Georgia*, 448 U.S. 438, 439 (1980) (two individuals walking one in front of the other in an airport and furtive looks between them are "too slender a reed to support the seizure in this case") and *Florida v. Royer*, 460 U.S. 491 (1983) (defendant traveled under an assumed name; paid for an airline ticket in cash with a number of small bills; traveled from Miami, a source city for illicit drugs; and appeared nervous in the airport).

CONCLUSION

Because Trooper Pappas conducted an unconstitutional search, Defendant's motion to suppress evidence resulting from that search should be granted.

Date: October 14, 2019                /s/ James M. Mason, Esq.
                                      Attorney for Defendant Michael Peavy-Wright

                                      Handelman & Mason
                                      16 Union Street
                                      Brunswick, ME 04011

CERTIFICATE OF SERVICE

I hereby certify I filed the foregoing Summary Argument using the Court's CM/ECF system, which will cause an electronic copy to be sent to all counsel of record.

                                      /s/ James M. Mason, Esq.
                                      Attorney for Defendant Michael Peavy-Wright