UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) 2:19-cr-00126-JDL |
| MICHAEL CURTIS PEAVY-WRIGHT, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON THE DEFENDANT'S MOTION TO SUPPRESS**

Michael Curtis Peavy-Wright is charged with possessing a controlled substance with intent to distribute, in violation of 21 U.S.C.A. § 841(a)(1) (West 2019). Peavy-Wright moves to suppress all evidence obtained from a search of his person by police (ECF No. 36). For the following reasons, I deny the motion.

**I. FACTS**

On February 22, 2019, at 2:14 a.m. on Interstate 95 near the York Toll Plaza, Maine State Police Trooper Jesse Duda initiated a traffic stop of a Ford F150 pickup truck because the vehicle's registration had expired. The truck contained four occupants: the driver and three passengers, including Peavy-Wright. When Trooper Duda approached the truck, he observed that Peavy-Wright, who was sitting in the rear driver's-side seat, was not wearing a seatbelt. He also observed a marijuana pipe in the front of the vehicle and smelled the odor of burnt marijuana.

Trooper Duda asked the driver for her license and the truck's registration. She provided her license, which indicated that she was from Presque Isle, Maine—an

1

approximately five-hour drive from where the truck was stopped.[1]  The driver was unable to locate the truck's registration, stating that she was not the owner of the vehicle.  Trooper Duda also asked the passengers, including Peavy-Wright, if they had identification, and each indicated that they did not.  At this point, Trooper Duda asked the driver to step out of the truck, and he returned to his vehicle with her.  He questioned the driver about why she had the truck and where she was going.  She indicated that she and the passengers lived in Presque Isle, that they had all driven down from Bangor that night to pick up the truck at the Kittery rest area on I-95, and that they were on their way back to Bangor when they got pulled over.  When asked to name the passengers in the truck, the driver identified Peavy-Wright as "Louie."  During the conversation, Trooper Duda ran the driver's license through a law enforcement database and discovered that she was the subject of a narcotics investigation in Maine.

At approximately 2:21 a.m., while Trooper Duda was questioning the driver, Sergeant Thomas Pappas arrived.  He approached the truck, saw the passengers still seated, and noticed that Peavy-Wright was not wearing a seatbelt.  Sergeant Pappas asked the passengers for identification, and they responded that they did not have any.  Sergeant Pappas then asked the passengers to write down their names and dates of birth.  Peavy-Wright wrote that his name was "Michael Wright."  When Sergeant Pappas asked Peavy-Wright where his "license [was] out of," Peavy-Wright

---

[1] I take judicial notice of this undisputed geographical fact.  *See Rooney v. Sprague Energy Corp.*, 495 F. Supp. 2d 135, 137 (taking judicial notice of how long it would take to drive between two towns in Maine); *see also Saco v. Tug Tucana Corp.*, 483 F. Supp. 2d 88, 93 n.4 (D. Mass. 2007) (taking judicial notice of driving distances reflected on mapquest.com).

2

stated, "Mass." Sergeant Pappas then followed up by asking, "Mass.? What part?" Peavy-Wright responded, "Kittery." Sergeant Pappas testified that he immediately knew that this was untrue because Kittery is a town in Maine, not Massachusetts.[2] At this point, Sergeant Pappas asked Peavy-Wright to step out of the truck. He asked for permission to pat down Peavy-Wright, which Peavy-Wright provided. Sergeant Pappas then conducted a patdown search of Peavy-Wright's chest, waist area, and pant-legs. The patdown did not yield any weapons or contraband.

Sergeant Pappas then continued to question Peavy-Wright about his identity. Sergeant Pappas told Peavy-Wright that the driver had identified him as "Louie," and Peavy-Wright responded that his name was "Michael Wright," not "Louie." Sergeant Pappas asked for Peavy-Wright's middle name, and Peavy-Wright stated that it was "Curtis." Sergeant Pappas attempted to verify Peavy-Wright's identity through a law enforcement database, but the database did not return any matches for a "Michael Wright" with the date of birth that Peavy-Wright had provided. The database did, however, return matches for the names of the other two passengers in the truck. Peavy-Wright explained that in his past interactions with law enforcement, officers had been unable to verify his identity. He further informed Sergeant Pappas that his last valid identification card had been issued in Ohio and suggested that a search of Ohio records might verify his identity.

Meanwhile, Trooper Duda had his trained K-9 partner, "Mack," perform a dog sniff of the truck. Mack alerted to the odor of narcotics on the truck. Trooper Duda

---

[2] I take judicial notice of this undisputed geographical fact. *See Fecho v. Eli Lilly & Co.*, 914 F. Supp. 2d 130, 134 n.4 (D. Mass. 2012) (noting that "[g]eography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial" (quoting *United States v. Bello*, 194 F.3d 18, 23 (1st Cir. 1999))).

3

then walked over to Sergeant Pappas' vehicle and spoke briefly with Sergeant Pappas and Peavy-Wright. Trooper Duda asked Peavy-Wright why the driver had referred to him as "Louie," and Peavy-Wright explained that he had gotten the nickname "Louie" from wearing Louis Vuitton clothing. Trooper Duda also asked Peavy-Wright about his travel plans, and Peavy-Wright stated that he had been picked up in Portland and was heading back to Portland.

After this brief interaction with Trooper Duda, Peavy-Wright volunteered to Sergeant Pappas for the first time that his last name was not "Wright" but "Peavy-Wright." He also explained that, on previous occasions, police officers had been unable to identify him in law enforcement databases under the name "Wright" but had been successful when searching for him under the name "Peavy-Wright." Sergeant Pappas then attempted to verify Peavy-Wright's identity based on this new information. Peavy-Wright also reiterated that his last valid identification card was issued in Ohio, offered to provide his social security number, and indicated that Portland Police Department had verified his identity during a stop in South Portland in 2018. When Sergeant Pappas misspelled "Peavy-Wright" during a radio communication, Peavy-Wright informed Sergeant Pappas of the correct spelling.

Two minutes later, after eighteen total minutes of fruitless efforts to verify Peavy-Wright's identity, Sergeant Pappas told Peavy-Wright, "You're just going to be detained right now at this point. I have no idea who you are. Put your hands right behind your back. You're not wearing a seatbelt. You're telling me you live in Kittery, Massachusetts." Sergeant Pappas placed Peavy-Wright in handcuffs and engaged in a probing search of Peavy-Wright's waist and groin area. Sergeant Pappas testified

that he did not limit himself to the scope of a patdown but conducted a "full search incident to arrest." During the search, Sergeant Pappas felt an object in Peavy-Wright's groin area and manipulated the object out of Peavy-Wright's pants so as to remove it without reaching inside. The object was a package of narcotics, which was later determined to be fentanyl, or a mixture containing primarily fentanyl.

Shortly after the search, Sergeant Pappas became aware of Ohio records confirming that Peavy-Wright was "Michael Curtis Peavy-Wright," and that Peavy-Wright had accurately reported his date of birth.

## II. LEGAL ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In general, a search must be supported by a valid warrant in order to be reasonable. *See Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2534 (2019). If a search of the person is conducted without a warrant, the search "is reasonable only if it falls within a recognized exception" to the warrant requirement. *Missouri v. McNeely*, 569 U.S. 141, 148 (2013) (citing *United States v. Robinson*, 414 U.S. 218, 224 (1973)); *see also Mitchell*, 139 S. Ct. at 2534.

### A. Full Search

Peavy-Wright argues that the full search of his person was unreasonable under the Fourth Amendment, and that all evidence discovered during and as a result of the search must be suppressed. The Government argues that the search was reasonable under the Fourth Amendment because it was a valid search incident to arrest. A search incident to a lawful arrest is an exception to the warrant

5

requirement. *Riley v. California*, 573 U.S. 373, 382–85 (2014); *see also Mitchell*, 139 S. Ct. at 2543. Thus, police may conduct a "full search of the person" pursuant to a lawful arrest, even without a warrant. *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2175−76 (2016) (citing *Robinson*, 414 U.S. at 235).

An arrest is lawful "if the officer 'has probable cause to believe that an individual has committed a criminal offense in his presence.'" *United States v. Flores*, 888 F.3d 537, 543 (1st Cir. 2018) (alterations omitted) (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). "Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." *United States v. Pontoo*, 666 F.3d 20, 31 (1st Cir. 2011) (quoting *United States v. Young*, 105 F.3d 1, 6 (1st Cir. 1997)). Probable cause is a "fluid concept" that must be evaluated upon the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 231−32 (1983). "It 'requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act.'" *United States v. Rasberry*, 882 F.3d 241, 250 (1st Cir. 2018) (alterations omitted) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)), *cert. denied*, 139 S. Ct. 591 (2018). When reviewing the existence of probable cause, courts look to the "collective knowledge" available to all officers participating in the investigation rather than isolating the information known by the individual officer who makes the arrest. *United States v. Azor,* 881 F.3d 1, 8 (1st Cir. 2017), *cert. denied,* 138 S. Ct. 2593 (2018); *see also Illinois v. Andreas*, 463 U.S. 765, 771 n.5 (1983) ("[W]here law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all.").

The Government argues that at the time of the search there was probable cause to arrest Peavy-Wright for violating Maine's stop-and-identify law, 29-A M.R.S.A. § 105(4) (West 2019), which provides that "[a] person is guilty of a Class E crime" if (1) "a law enforcement officer has probable cause to believe the person violated or is violating [Title 29-A]," and (2) "the person intentionally fails or refuses upon request to give the person's correct name, address or date of birth to a law enforcement officer." With respect to the first element, the Government argues that there was probable cause to believe that Peavy-Wright violated 29-A M.R.S.A. § 2081(3-A) by not wearing a seatbelt.[3] Trooper Duda and Sergeant Pappas both testified that they observed Peavy-Wright sitting in the truck without a seatbelt on. Peavy-Wright suggests that there was not probable cause to believe that he had violated the seatbelt statute because neither officer saw him without a seatbelt on while the truck was in motion. However, Trooper Duda saw Peavy-Wright not wearing a seatbelt when he first approached the truck immediately after initiating the traffic stop, which would suggest to a reasonably prudent person that Peavy-Wright had not been wearing a seatbelt while the truck was moving mere seconds before. Thus, there was probable cause to believe that Peavy-Wright had violated 29-A M.R.S.A. § 2081(3-A), which establishes the first element of § 105(4).

The question remains whether there was probable cause with respect to the second element, *i.e.*, whether there was probable cause to believe that Peavy-Wright had "intentionally fail[ed] . . . to give [his] correct name, address, or date of birth" to

---

[3] 29-A M.R.S.A. § 2081(3-A) provides, in pertinent part: "When a person 18 years of age or older is a passenger in a vehicle that is required by the United States Department of Transportation to be equipped with seat belts, the passenger must be properly secured in a seat belt. Each such passenger is responsible for wearing a seat belt as required by this subsection . . . ."

Sergeant Pappas or Trooper Duda prior to the search. *See* 29-A M.R.S.A. § 105(4). Here, Peavy-Wright told Sergeant Pappas that he was from Kittery, Massachusetts, which was false because Kittery is a town in Maine, not Massachusetts. This statement alone supports probable cause that Peavy-Wright intentionally failed to give his correct address to Sergeant Pappas and thus violated § 105(4).

The totality of the circumstances known to Sergeant Pappas and Trooper Duda at the time of the search also establish that there was probable cause to believe that Peavy-Wright had intentionally failed to give his correct name. The officers did not know who Peavy-Wright was. Peavy-Wright had provided Sergeant Pappas with two different last names, "Wright" and "Peavy-Wright." When he gave Sergeant Pappas his full last name, Peavy-Wright admitted that, on other occasions, officers had been unable to locate him in law enforcement databases under the name "Wright" but had been able to when they ran his full last name of "Peavy-Wright." This admission supports a reasonable inference that Peavy-Wright knew he was not giving his correct name when he reported that his last name was "Wright."

Peavy-Wright was also associated with two different first names, "Louie" and "Michael." Though Peavy-Wright did state that "Louie" was a nickname referring to his Louis Vuitton clothing, courts must consider "the whole picture" and may not "dismiss outright any circumstances that [are] susceptible of innocent explanation." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (quotations omitted). Further, Sergeant Pappas had attempted to verify Peavy-Wright's identity by searching law enforcement databases for eighteen minutes but was unable to do so. Sergeant Pappas also knew that Peavy-Wright had already lied about being from

Kittery, Massachusetts, which supports a reasonable inference that he might be lying about his name as well.

Further, the totality of the circumstances suggest that Peavy-Wright had reason to conceal his identity, which supports a reasonable inference that he was lying about his name. At the time of the search, Trooper Duda knew that the truck Peavy-Wright had been traveling in smelled of burnt marijuana and contained a glass marijuana pipe. A trained police K-9 had alerted to the odor of narcotics on the truck, giving the officers reason to believe that the truck contained contraband. Further, the driver of the truck did not own the vehicle, was approximately five hours away from her home address at 2:14 a.m., and was a suspect in an ongoing narcotics investigation. Finally, the driver's story about where she and the passengers had come from and where they were going was not consistent with Peavy-Wright's own account of his travel plans: The driver stated that all the occupants had driven to Kittery from Bangor and were heading back to Bangor, while Peavy-Wright reported that he had been picked up in Portland and was going back to Portland. Taken together, these facts would suggest to a reasonable officer that Peavy-Wright might be associated with drug-related criminal activity, which supports the inference that he might have reason to conceal his true identity. While this inference alone does not establish probable cause, it does add to the totality of the circumstances supporting probable cause.

Though the officers later discovered that Peavy-Wright ultimately provided his correct first name and middle name, his full last name, and his actual date of birth before the search (albeit in a piecemeal fashion), that does not entitle Peavy-Wright

9

to suppression of the evidence at issue. The existence of probable cause depends on the facts known to the officers at the time of the challenged search, not on facts discovered afterward. *See Flores*, 888 F.3d at 543–44; *Rasberry*, 882 F.3d at 250.

Peavy-Wright asserts that the facts known to the officers at the time of the search do not establish probable cause because he had done "everything possible to make [Sergeant] Pappas believe he was telling the truth" when he provided his full, hyphenated last name. ECF No. 51 at 7. Indeed, after providing his hyphenated last name, Peavy-Wright reiterated that a search of Ohio records would verify his identity, offered to share his social security number, shared information about a previous encounter with the Portland Police Department, and corrected Sergeant Pappas's spelling of "Peavy-Wright." While these facts do support a reasonable inference that Peavy-Wright was truthful when he stated that his last name was "Peavy-Wright," they equally support a reasonable inference that he had knowingly reported a false name earlier in the encounter, when he stated that his last name was simply "Wright." Thus, these facts do not negate probable cause as to the false name portion of § 105(4). Nor do they negate probable cause as to the false address portion, which arose when Peavy-Wright represented to Sergeant Pappas that he was from Kittery, Massachusetts.

Peavy-Wright further argues that the search and arrest were unjustified because Sergeant Pappas arrested and searched him out of impatience and sheer frustration over his inability to verify Peavy-Wright's identity. But the existence of probable cause to arrest is an objective inquiry: "[A]n arresting officer's state of mind . . . is irrelevant." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *Whren v.*

*United States*, 517 U.S. 806, 812–13 (1996) and *Arkansas v. Sullivan*, 532 U.S. 769 (2001)). "That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.*; *accord United States v. Favreau*, 886 F.3d 27, 30 (1st Cir. 2018).

Peavy-Wright also hints at, but does not fully develop, an argument that the search was not incident to arrest because he was merely detained, not arrested, prior to the search. However, he was effectively in custody at the time of the search and was formally arrested shortly thereafter. "[W]hether a formal arrest occurred prior to or followed 'quickly on the heels' of the challenged search does not affect the validity of the search so long as the probable cause existed prior to the search." *United States v. Bizier*, 111 F.3d 214, 217 (1st Cir. 1997) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)).

Thus, because Sergeant Pappas had probable cause to arrest Peavy-Wright for violating § 105(4) prior to the search here, the search was justified under the Fourth Amendment as a search incident to a lawful arrest for that offense. Accordingly, I do not reach the Government's alternative argument that there was independent probable cause to arrest Peavy-Wright for possession of controlled substances prior to the search.

**B.    Patdown Search**

Peavy-Wright also argues that the drugs discovered during the full search of his person must be suppressed because the initial patdown search was unreasonable under the Fourth Amendment and "its shadow extends onto" the full search. Under an exception to the warrant requirement first recognized in *Terry v. Ohio*, 392 U.S. 1

(1968), a police officer "may frisk a suspect on reasonable suspicion that the suspect is armed and dangerous." *Rasberry*, 882 F.3d at 249 (stating the standard); *Minnesota v. Dickerson*, 508 U.S. 366, 372–73 (1993) (discussing *Terry*). The frisk, or patdown, must be "carefully limited" to "the outer clothing of [the person] in an attempt to discover weapons which might be used to assault [the officer]." *United States v. Belin*, 868 F.3d 43, 49 (1st Cir. 2017) (quoting *Terry*, 392 U.S. at 30). Here, Peavy-Wright argues that the patdown was unreasonable both because it was not supported by reasonable suspicion and because it was more intrusive than a lawful *Terry* frisk.

But the patdown here was justified under another exception to the warrant requirement: "the consent exception for cases where voluntary consent is given to the search." *Mitchell*, 139 S. Ct. at 2543. "[A] validly obtained and voluntary consent renders a search or seizure reasonable, thus eliminating the need for a warrant." *Pagán-González v. Moreno*, 919 F.3d 582, 590 (1st Cir. 2019) (quotation omitted). "In determining whether consent was voluntarily given, we look to the totality of circumstances, including the person's 'age, education, experience, intelligence, and knowledge of the right to withhold consent.'" *United States v. Ramdihall*, 859 F.3d 80, 89 (1st Cir. 2017) (quoting *United States v. Forbes*, 181 F.3d 1, 5 (1st Cir. 1999)). Courts "also consider 'whether the consenting party was advised of his or her constitutional rights and whether permission to search was obtained by coercive means or under inherently coercive circumstances.'" *Id.* (quoting *Forbes*, 181 F.3d at 5).

In *Ramdihall*, the First Circuit noted that "the fact of custody alone is never enough to demonstrate coerced consent," *id.* (quoting *Forbes*, 181 F.3d at 6), and emphasized that "the voluntariness issue turns . . . not on whether [the defendant] was detained, but on whether he was detained in a manner that precluded him from freely consenting to the search." *Id.* Because the defendant in *Ramdihall* had consented to a search during an ordinary traffic stop where "there was never any physical constraint, no handcuffing, no display of drawn weapons[, and] the character of the interrogation was mild," the court held that the consent was voluntary and the search was therefore reasonable under the Fourth Amendment. *Id.*

Here, there is no dispute that Peavy-Wright consented to the initial patdown. The question is whether that consent was voluntarily given, and the totality of the circumstances establishes that it was. Like the defendant in *Ramdihall*, Peavy-Wright consented to the patdown during an ordinary traffic stop. Sergeant Pappas had not handcuffed or otherwise physically restrained Peavy-Wright at that point, nor had he engaged in deceptive or coercive interrogation techniques. He had simply asked Peavy-Wright to provide his name and address and to step out of the truck. Both of these requests were permissible. *See United States v. Tanguay*, 918 F.3d 1, 7 (1st Cir. 2019) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment.") (quoting *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 185 (2004)); *United States v. Fernandez*, 600 F.3d 56, 59 (1st Cir. 2010) ("[O]fficers may order the driver and any passengers to get out of the car until the traffic stop is complete . . . .") (citing *Maryland v. Wilson*, 519 U.S. 408, 415 (1997) and *Pennsylvania v. Mimms*, 434 U.S. 106, 111 & n.6 (1977)). Moreover,

there is no evidence that Peavy-Wright's age, intelligence, education, or experience prevented him from giving voluntary consent. And though Sergeant Pappas did not specifically advise Peavy-Wright of his right to refuse consent, that does not, on its own, render consent involuntary. *See United States v. Drayton*, 536 U.S. 194, 206–07 (2002) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). Because the patdown was consensual and therefore reasonable under the Fourth Amendment, I do not decide whether the patdown was independently justified as a *Terry* frisk.

## III. CONCLUSION

For the foregoing reasons, Peavy-Wright's motion to suppress (ECF No. 36) is **DENIED**.

**SO ORDERED.**

Dated: November 14, 2019

                                          /s/ JON D. LEVY
                                   **CHIEF U.S. DISTRICT JUDGE**